**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
Southern Division

| | |
|---|---|
| **CLETA S.,** ) | |
|  ) | |
| **Plaintiff,** ) | |
|  ) | |
| v. ) | **Civil Action No. CBD-19-2906** |
|  ) | |
| **ANDREW SAUL,** ) | |
|  ) | |
| **Commissioner,** ) | |
| **Social Security Administration,** ) | |
|  ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

Cleta S. ("Plaintiff") brought this action under 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"). The Administrative Law Judge ("ALJ") denied Plaintiff's claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA") and for Supplemental Security Income Benefits ("SSI") under Title XVI of the SSA. Before the Court are Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion"), ECF No. 11, Plaintiff's Alternative Motion for Remand, ECF No. 11, ("Plaintiff's Alternative Motion"), and Defendant's Motion for Summary Judgment ("Commissioner's Motion"), ECF No. 12. The Court has reviewed the motions, related memoranda, and the applicable law. No hearing is deemed necessary. *See* Loc. R. 105.6 (D. Md.). For the reasons presented below, the Court hereby **DENIES** Plaintiff's Motion, **DENIES** Commissioner's Motion, **GRANTS** Plaintiff's Alternative Motion, and **REMANDS** the ALJ's decision pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. A separate order will issue.

1

## I. Procedural Background

On November 2, 2012, Plaintiff filed for DIB and SSI under Titles II and XVI of the SSA, alleging disability beginning April 9, 2010. R. 15, 90. Plaintiff's claims were initially denied on February 19, 2013, and upon reconsideration on June 3, 2013. R. 90. An administrative hearing was held on February 23, 2015. R. 15, 90. On March 23, 2015, Plaintiff's claims for DIB and SSI were denied. R. 15, 98. Plaintiff sought review by the Appeals Council, which concluded on July 1, 2016, that there was no basis for granting the request for review. R. 15. Plaintiff did not appeal the decision to Federal Court. *Id.*

On April 8, 2015, Plaintiff refiled for SSI, alleging disability beginning April 8, 2015[1]. R. 37, 103, 113-114. On August 4, 2016, Plaintiff re-filed for DIB. *Id.* Plaintiff alleged disability due to chronic iritis uveitis in both eyes, corneal abrasion, depression, and three herniated discs in her lower back. R. 104, 108, 113-114, 148. Plaintiff's claims were initially denied on February 9, 2017, and upon reconsideration on August 2, 2017. R. 15. An administrative hearing was held on September 12, 2018. R. 15. On November 13, 2018, Plaintiff's claims for DIB and SSI were denied. R. 37. Plaintiff sought review by the Appeals Council, which concluded on August 22, 2019, that there was no basis for granting the request for review. R. 1. Plaintiff subsequently filed an appeal with this Court. ECF No. 1.

## II. Standard of Review

On appeal, the Court has the power to affirm, modify, or reverse the decision of the ALJ "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2019). The Court must affirm the ALJ's decision if it is supported by substantial evidence and the ALJ applied the correct law. *Id.* ("The findings of the Commissioner of Social Security as

---

[1] Plaintiff amended her alleged onset date during the hearing on September 12, 2018, to March 24, 2015, the day after the date of the previous decision. R. 15.

to any fact, if supported by substantial evidence, shall be conclusive."); *see also Russell v. Comm'r of Soc. Sec.*, 440 F. App'x 163, 164 (4th Cir. 2011) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)). "In other words, if the ALJ has done his or her job correctly and supported the decision reached with substantial evidence, this Court cannot overturn the decision, even if it would have reached a contrary result on the same evidence." *Schoofield v. Barnhart*, 220 F. Supp. 2d 512, 515 (D. Md. 2002). Substantial evidence is "more than a mere scintilla." *Russell*, 440 F. App'x at 164. "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Hays*, 907 F.2d at 1456 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks omitted) ("It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence.").

      The Court does not review the evidence presented *de novo*, nor does the Court "determine the weight of the evidence" or "substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." *Hays*, 907 F.2d at 1456 (citations omitted); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) ("[T]he language of § [405(g)] precludes a *de novo* judicial proceeding and requires that the court uphold the Secretary's decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'"). The ALJ, not the Court, has the responsibility to make findings of fact and resolve evidentiary conflicts. *Hays*, 907 F.2d at 1456 (citations omitted). If the ALJ's factual finding, however, "was reached by means of an improper

3

standard or misapplication of the law," then that finding is not binding on the Court. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citations omitted).

The Commissioner shall find a person legally disabled under Title II and Title XVI if she is unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a) (2012). The Code of Federal Regulations outlines a five-step process that the Commissioner must follow to determine if a claimant meets this definition:

1) Determine whether the plaintiff is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i)(2012). If he is doing such activity, he is not disabled. If he is not doing such activity, proceed to step two.

2) Determine whether the plaintiff has a "severe medically determinable physical or mental impairment that meets the duration requirement in § [404.1509/416.909] or a combination of impairments that is severe and meets the duration requirement." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (2012). If he does not have such impairment or combination of impairments, he is not disabled. If he does meet these requirements, proceed to step three.

3) Determine whether the plaintiff has an impairment that "meets or equals one of [the C.F.R.'s] listings in appendix 1 of this subpart and meets the duration requirement." 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) (2012). If he does have such impairment, he is disabled. If he does not, proceed to step four.

4) Determine whether the plaintiff retains the "residual functional capacity" ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv) (2012). If he can perform such work, he is not disabled. If he cannot, proceed to step five.

5) Determine whether the plaintiff can perform other work, considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v) (2012). If he can perform other work, he is not disabled. If he cannot, he is disabled.

Plaintiff has the burden to prove that he is disabled at steps one through four, and Commissioner has the burden to prove that Plaintiff is not disabled at step five. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).

The RFC is an assessment that represents the most a claimant can still do despite any physical and mental limitations on a "regular and continuing basis." 20 C.F.R. §§ 404.1545(b)-(c), 416.945(b)-(c). In making this assessment, the ALJ "must consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (citing *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)); *See also* 20 C.F.R. §§ 404.1545(a), 416.945 (a). The ALJ must present a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)," and must then "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *See Thomas*, 916 F.3d at 311; SSR 96-8p, 1996 WL 374184 at *7 (S.S.A. July 2, 1996). "Once the ALJ has completed the function-by-function analysis, the ALJ can make a finding as to the claimant's RFC." *Thomas*, 916 F.3d at 311. "Ultimately, it is the duty of the [ALJ] reviewing the case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts of evidence." *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)). "[R]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (citing *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)).

**III.    Analysis**

The ALJ evaluated Plaintiff's claim using the five-step sequential evaluation process. R. 16–37.  At step one, the ALJ determined that "[Plaintiff] has not engaged in substantial gainful activity since March 24, 2015, the implied alleged amended onset date." R. 21.  At step two, under 20 C.F.R. § 404.1520(c) and § 416.920(c), the ALJ determined that "[Plaintiff]" had the following severe impairments: degenerative disc disease of the right knee, depression, obesity, degenerative joint disease, panic disorder, and alcohol use disorder.  R. 21.  The ALJ found that Plaintiff's chronic, recurrent uveitis, was a non-severe impairment.  R. 21.  The ALJ explained that:

> [A]ll [other] medically determinable impairments, found in the record, other than those identified above as severe, are not severe, as they cause no more than minimally vocationally relevant physical or mental limitations, have not lasted or are not expected to last, for a continuous period of twelve months, and/or are not expected to result in death. Other alleged impairments, if any, are not medically determinable.

R. 21.  At step three, the ALJ determined Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." R. 22.  The ALJ also found that Plaintiff has moderate limitations in interacting with others; concentrating, persisting, or maintaining pace; as well as moderate limitations in her ability to adapt or manage herself.  R. 23-24.  Before turning to step four, the ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(a) and 416.967(a). The ALJ discerned that Plaintiff had the following limitations:

> [Plaintiff] can climb ramps and stairs occasionally; never climb ladders, ropes, or scaffolds.  [Plaintiff] can balance, kneel, crouch and crawl occasionally. [Plaintiff] can never work at unprotected heights. [Plaintiff]

> is able to perform simple, routine, and repetitive tasks, but not at a production rate pace (e.g. assembly line work)[2]. [Plaintiff] is limited to performing simple work-related decisions. [Plaintiff] can have occasional contact with supervisors and coworkers. [Plaintiff] can have no contact with the public.

R. 25. At step four, the ALJ determined Plaintiff is unable to perform any past relevant work. R. 35. At step five, with the benefit of a Vocational Expert ("VE"), the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including: marker, photocopy machine operator, and router. R. 36. The ALJ found that "Plaintiff has not been under a disability, as defined in the Social Security Act, from March 24, 2015, through the date of this decision." R. 37.

On appeal, Plaintiff argues that the Court should reverse the final decision of the ALJ, or in the alternative, remand the case to the Commissioner for further proceedings, alleging that: (1) the ALJ erred in the use of the undefined term "production rate pace" to describe the limitation from [Plaintiff's] moderate impairment in concentrating; (2) the ALJ erred in finding [Plaintiff's] uveitis a non-severe impairment; and, (3) the ALJ failed to consider the objective medical evidence of the worsening of [Plaintiff's] condition since the previous ALJ decision denying benefits. Pl.'s Mem. in Supp. of Pl.'s Mot. 1–9, ECF No. 10–1.

The Court agrees in part with Plaintiff, in part with Defendant, and remands the case for the reasons stated below.

### A. The ALJ Erred By Not Defining The Term "Production Rate Pace" In The Hypothetical Question Posed To the Vocational Expert.

Plaintiff asserts that the ALJ did not define the term "production rate pace" in the hypothetical questioning of the vocational expert. *Id.* The Commissioner employs a VE to offer

---

[2] The term "assembly line work", was not used in the ALJ's hypothetical to the VE during the hearing to explain the term "production rate pace." R. 79. The ALJ did however use the term "assembly line work" in his decision to clarify "production rate pace" in the RFC. R. 25-26.

7

evidence as to whether a claimant possesses the RFC to meet the demands of past relevant work or adjust to other existing work. 20 C.F.R. §§ 404.1560(b)-(c), 416.960(b)-(c) (2011). The VE may respond to a hypothetical about a person "with the physical and mental limitations imposed by the claimant's medical impairment(s)." 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2). "In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of [a] claimant's impairments." *Hines v. Barnhart*, 453 F.3d 559, 566 (4th Cir. 2006) (quoting *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989)). A hypothetical question is "unimpeachable if it adequately reflects a residual functional capacity for which the ALJ had sufficient evidence." *Fisher v. Barnhart*, 181 F. App'x 359, 364 (4th Cir. 2006) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005)) (internal quotation marks omitted). The ALJ is afforded substantial leeway in the formulation of hypothetical questions. *France v. Apfel*, 87 F. Supp. 2d 484, 490 (D. Md. 2000) (citing *Koonce v. Apfel,* No. 98–1144, 1999 WL 7864, at *5 (4th Cir. Jan.11, 1999)).

Thus, a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion. *Thomas v. Berryhill*, 916 F.3d 307, 312 (4th Cir. 2019), as amended (Feb. 22, 2019). The second component, the ALJ's logical explanation, is just as important as the other two. *Id.* Indeed, our precedent makes clear that meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion. *Id.* (quoting *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018)).

Plaintiff points to the Court's opinion in *Thomas v. Berryhill*, 916 F.3d at 312, where the Court found that the use of the terms "production rate or demand pace," was a basis for remand, as the ALJ did not define the terms "production rate pace or demand pace." *Id.* The Court in

8

*Thomas* explained that, "the ALJ stated Thomas could not perform work, requiring a production rate or demand pace, [and thusly the ALJ] did not give us enough information to understand what those terms mean." *Id.* [Further], [t]hat makes it difficult, if not impossible, for us to assess whether their inclusion in Thomas's RFC is supported by substantial evidence." *Id. See also Perry v. Berryhill*, 765 F. App'x 869, 872 (4th Cir. 2019) (finding that the ALJ's use of the term "non-production oriented work setting," which is not defined by the regulations or case law or otherwise self-explanatory, prevented meaningful review because the reviewing court could not determine what the ALJ meant by the term or whether there was a "logical bridge" between the evidence in the record and the ALJ's inclusion of the limitation).

Similarly, in *Travis X. C. v. Saul*, No. GJH-18-1210, 2019 WL 4597897, at *5 (D. Md. Sept. 20, 2019), the ALJ, did not provide any explanation of what [he] intended by the "production rate pace" limitation. *Id.* The Court further found that the ALJ did not provide the proper "logical bridge" to support [the ALJ's] use of the term "production rate pace," and the Court was "left to guess" whether the evidence was the basis for the ALJ's conclusion regarding "production rate pace," which warranted remand. *Id.*

The Court has distinguished cases in which the ALJ offers some explanation or definition for the use of terms, that are defined in the DOT. For example, in *Teresa B. v. Commissioner, Social Security Administration*, No. SAG-18-2280, 2019 WL 2503502 (D. Md. June 17, 2019), the ALJ "included an RFC provision limiting Plaintiff to no work requiring a high-quota production-rate pace (i.e., rapid assembly line work where co-workers are side-by-side and the work of one affects the work of the other)." *Id.* at 2. The Court in this case found that the ALJ's use of "production-rate pace" was acceptable because he included a definition for the term

immediately thereafter.  *Id.* Furthermore, the Court held that given the ALJ's explanation of "production-rate pace," the RFC proposed was adequate.  *Id.*

Plaintiff suggests that the ALJ erred by using the undefined term of "production rate pace."  Pl.'s Mem. in Supp. of Pl.'s Mot. 6–7, ECF No. 10–1.  The Court agrees with Plaintiff.  Defendant contends that, "the VE expressed no confusion about the hypothetical question when [she] was asked or when testifying to the available decisions."  Def's Mem. in Supp. of Def's Mot. 11, ECF No. 12-1.   Defendant goes on to argue that "[t]he jobs identified by the VE clearly do not involve assembly line work."  *Id. at 12.*  However, that conclusion is for the VE to make, not the Court or counsel.  Further, it is not the Court's or counsel's job to assume that the VE understood the hypothetical or to interpret what the VE meant in his or her testimony.

Here, the ALJ failed to provide a definition, explanation, or anything else serving as a "logical bridge" to explain the meaning of his use of the term "production rate pace."  The term was not explained in the ALJ's RFC analysis, nor did the ALJ explain the term to the VE when posing the hypothetical containing the term.  The Court finds it troubling that the ALJ attempted to clarify his use of the term "production rate pace" for the first time in his written opinion, as meaning "assembly line work."  R. 25-26.  This clarity was far too late. While the ALJ attempted to remedy his use of the undefined term, because it was after the hearing concluded and the VE did not have an opportunity to hear the explanation by the ALJ, the Court finds that this remedial action prejudiced Plaintiff.  The Court also finds that, like in *Thomas* and *Travis*, the Court here is left to guess, whether the evidence was the basis for the ALJ's conclusion regarding "production rate pace."  Furthermore, the Court also reasons, that due to the ALJ not explaining the term "production rate pace" to the VE, the ALJ conducted an improper hypothetical to the VE.  Therefore, Plaintiff was prejudiced by the ALJ's error.

The Court finds that remand is necessary to provide a proper definition of the term "production work pace."

### B. Although The ALJ Found That Plaintiff's Uveitis Was Not A Severe Impairment, Any Error Was Harmless As The ALJ Found Other Severe Impairments And Plaintiff Was Able To Continue Through The Sequential Evaluation Process

In determining whether a claimant has a disability within the meaning of the Act, the ALJ, acting on behalf of the Commissioner, follows the five-step evaluation process outlined in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015). The evaluation process is sequential, meaning that "[i]f at any step a finding of disability or nondisability can be made, the [Commissioner]will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). An ALJ's failure to characterize a claimant's condition as severe at step two of the sequential evaluation process does not always warrant remand, even when erroneous. *Ramon M. v. Berryhill*, No. CV CBD-18-2025, 2019 WL 2436938, at *6 (D. Md. June 10, 2019).

Step two requires "a threshold determination of whether a [plaintiff] is suffering from a severe impairment or a combination of impairments." *Lewis v. Comm'r of Soc. Sec.*, SAG-15-84, 2015 WL 5905276, at *2 (D. Md. Oct. 6, 2015) (citing *Bowen v. Yuckert*, 482 U.S. 137, 147–48 (1987)). "If a [plaintiff] is found to be suffering from a severe impairment(s), the analysis simply proceeds to the next step." *Id.* (citing 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii)). When a plaintiff makes a "threshold showing that other disorders constituted severe impairments" and "the ALJ continued with the sequential evaluation process," an ALJ's failure to find an additional impairment nonsevere is harmless. *Davis v. Comm'r, Soc. Sec. Admin.*, SAG-12-813, 2013 WL 1124589, at *1 (D. Md. Mar. 18, 2013). *See also Richard William V. v. Comm'r, Soc. Sec. Admin.*, No. CV ADC-18-3311, 2019 WL 4305734, at *5 (D. Md. Sept. 11,

2019). *Todd Michael M. v. Comm'r, Soc. Sec. Admin.*, No. CV ADC-19-382, 2020 WL 2319114, at *4 (D. Md. May 11, 2020).

Further, if a claimant does have a severe impairment or combination of impairments, the ALJ must consider the effects of *both the severe and non-severe impairments* at the subsequent steps of the process, including the determination of RFC. *See* 20 C.F.R. § 404.1523 (2010); SSR 96-8p, 1996 WL 374184, at * 5. "If the ALJ proceeds to discuss and consider the non-severe impairment at subsequent steps, there is no prejudice to the claimant." *Rivera v. Astrue*, Civ. A. No. CBD-12-1095, 2013 WL 4507081, at *7 (D. Md. Aug. 22, 2013) (citation omitted); *see also Thomas v. Comm'r. Soc. Sec. Admin.*, Civ. No. SAG-11-3587, 2013 WL 210626, at *2 (D. Md. Jan. 17, 2013) (finding harmless error where the ALJ continued with sequential evaluation process and considered both severe and non-severe impairments);

Here, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, depression, obesity, degenerative joint disease, panic disorder, and alcohol use disorder. R. 21. The ALJ discussed medical records pertaining to the severe impairments he found. R. 21-22. After discussing Plaintiff's severe impairments, the ALJ proceeded to step three of the evaluation process, pursuant to 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) and determined whether Plaintiff had an impairment that "me[t] or equal[ed] one of [the C.F.R.'s] listings … and me[t] the duration requirement." 20 C.F.R. § 404.1520(a)(4)(iii), 416.920(a)(4)(iii) (2012).

Additionally, the ALJ considered Plaintiff's testimony regarding her uveitis, and incorporated her uveitis, when posing the RFC to the VE. The ALJ found that "[Plaintiff] has a driver's license but has not been able to drive in over two years due to chronic uveitis, which has left both eyes blurry. [Plaintiff] has constant flare-ups of her uveitis, which leaves her

temporarily blinded, and requires her to lie down in a darkened room until the medication starts to work.  [Plaintiff] has had injections in her eye for pain relief.  Plaintiff has not been able to work since she quit her tollbooth collector job because she has been sick with one ailment or another since that time." R. 24-35.

After considering Plaintiff's severe and non-severe impairments, the ALJ, proceeded with the sequential evaluation process, and discussed Plaintiff's uveitis in length at step four of the sequential evaluation process, where he considered all of her impairments.  Therefore, the Court finds that in the light most favorable to Plaintiff, any error resulting from the ALJ's determination that Plaintiff's uveitis was non-severe, was harmless.

Lastly, Plaintiff argues that the ALJ failed to consider the objective medical evidence of the worsening of Plaintiff's condition, since the previous ALJ decision denying benefits.  However, in view of the Court's decision to remand the matter due to the improper use of the undefined term "production rate pace," and inadequate hypothetical posed to the VE, the Court declines to address the remaining issues.  *See Brown v. Colvin*, 639 F. App'x 921, 923 (4th Cir. 2016) (declining to address all of a claimant's issues raised once the court decided to remand on one issue); *Edna Faye H. v. Saul*, No. TMD-18-581, 2019 WL 4643797, at *6 (D. Md. Sept. 24, 2019).  On remand, the ALJ should address the issues raised by Plaintiff.  *Timothy H. v. Saul*, No. TMD 18-1675, 2019 WL 4277155, at *7 (D. Md. Sept. 10, 2019).  In remanding this case, the Court expresses no opinion as to whether the ALJ's ultimate decision that Plaintiff was not disabled is correct or incorrect.  *See Parker v. Comm'r, Soc. Sec.*, No. ELH-16-2607, 2017 WL 679211, at *4 (D. Md. Feb. 21, 2017).

## C.  Conclusion

Based on the foregoing, the Court hereby **DENIES** Plaintiff's Motion, **DENIES**

Commissioner's Motion, **GRANTS** Plaintiff's Alternative Motion and **REMANDS** this matter for further proceedings.

November 9, 2020

/s/
Charles B. Day
United States Magistrate Judge

CBD/pjkm